Argued April 28, reversed June 21, 1976

BLOOMFIELD, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(No. 76-3133 SUA, CA 5844)
550 P2d 1400

*John H. Horn,* Eugene, argued the cause for petitioner. With him on the briefs were Young, Horn, Cass & Scott, Eugene.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Samuel G. Wilson,* Eugene, argued the cause for respondent Home Interiors & Gifts, Inc., a corporation. With him on the brief were Thwing, Atherly & Butler, Eugene.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

FORT, J.

**FORT, J.**

The Employment Appeals Board reversed the referee and found that claimant did not have good cause for leaving work and should be denied benefits under ORS 657.176(2)(c).[1] The board also found that claimant was not actively seeking work and was not available for work during 7 of the 13 weeks that she was unemployed. ORS 657.155(1)(c).[2] Claimant appeals on both questions.

Claimant had worked for nine years as a salesperson for a firm selling interior decorations and as a manager of other salespeople for seven and one-half of those years. She testified that she had done well financially in 1973 and 1974, but that business had dropped off in 1975 because of economic conditions, increased expenses, and some problems related to her job. Claimant was paid on the basis of the sales she made plus a management commission based on the sales made by persons under her. She was responsible for expenses of recruitment, training, transportation, and freight handling. According to her figures, her net earnings for the first eight months of 1975 were $473.01, or an

---

[1] ORS 657.176(2)(c):

"(2) If the authorized representative designated by the administrator finds:

"* * * * *

"(c) The individual voluntarily left work without good cause, * * *

"* * * * *

the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred."

[2] ORS 657.155(1)(c):

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the administrator finds that:

"* * * * *

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. No individual participating in a community work and training program, as defined in ORS 411.855, shall, solely by reason thereof, be deemed unavailable for work within the meaning of this section."

average of about $60 per month. She testified that she worked 60 to 80 hours per week.

She also testified that by August 1975 she had completely run out of capital with which to continue the operation, that the company had had to send her $500 to keep going through the end of August, and that her bills were unpaid and vehicles and furniture due to be repossessed.

The referee found that her net income had dropped because of market conditions generally and an increase in her costs. He concluded that she had good cause to leave her work because her expenses were exceeding her costs and she had no means of continuing or of receiving a profit.

The board reversed the referee and found that she did not have good cause to leave her work because her business was of a kind that fluctuated, because her gross income was equal to that of a few years earlier, and because she had deducted "all household and other personal expenses as well as business expenses" so that her net income appeared to be lower than it was.

We do not find substantial evidence in the record to support these findings or the conclusions the board draws from them. The board does not consider the increased costs which in 1975 produced a lower net return from a gross income equal to that of several years earlier. It is also not clear what the board considered as "all" personal expenses. Claimant deducted a portion of her household rent and expenses for the room which she testified was necessary and was used exclusively for her work. That fact is not disputed, and under the circumstances of her employment it was necessary and a proper expense. Int. Rev. Code § 162(a), Reg. § 1.262-1(b)(3). She deducted $583.08 for the first eight months of 1975. Even were this amount properly includable in her income, claimant would have net earnings of only $1,056.09 for eight months' full time or more work or $132 per month. In addition, the board apparently did not consider claimant's tes-

timony that she did not have the financial ability to continue in her employment. Claimant's testimony is not contradicted.

■ In *Grigsby v. Employment Division,* 24 Or App 499, 546 P2d 788 (1976), we held that *de minimis* compensation constitutes good cause for leaving work. We hold that claimant's minimal income and her deteriorating financial situation constituted good cause for leaving work.

The second question on appeal is whether claimant was available for work and actively seeking work during the first seven weeks of unemployment. At the hearing claimant testified that as soon as she had quit working she had made numerous telephone calls and other contacts with department stores and other businesses looking for decorator jobs, and that she continued to check with potential employers. These contacts were not listed on the weekly forms claimant turned in to the Employment Division. Claimant testified that she had understood that only interviews were to be listed, and that she had not listed preliminary contacts, telephone contacts and applications made.

■ The referee believed claimant and found that she was available for work and actively looking for work as required by ORS 657.155(1)(c). The board reversed the referee on this issue, finding that during the first seven weeks of unemployment claimant had confined her work search to checking newspaper ads and employment agencies, making only one personal contact. The board evidently relied on the forms and ignored claimant's testimony. In *Evjen v. Employment Division,* 22 Or App 372, 539 P2d 662 (1975), this court held in a case where the board had no basis in the record for arriving at a different result on an issue of credibility than the referee, that the referee's decision would stand. We find no evidence in the record here which contradicts claimant's testimony that she did not understand that she should list all contacts with

potential employers on her weekly employment division forms, and not just personal interviews. On the basis of *Evjen* we hold that the referee's decision was correct.

In addition, the board found that during the first weeks of her unemployment claimant performed a substantial amount of work handling merchandise for the employer and therefore was not available for work or searching for work. We do not find substantial evidence to support this finding. Claimant testified that she worked 12 or 14 hours during the months of September and October, 1975. Indeed respondent employer concedes in its brief that the record shows claimant worked only 14 hours during those months and concedes that there is no substantial evidence to support the finding of the board that she worked more. Claimant also testified that during the early fall of 1974 she had had some difficulties handling the freight and had spent considerable time working with freight. That, however, obviously did not apply to 1975. Work performed in 1974 would not affect her availability for work in the fall of 1975.

■ Because the referee's decision on credibility was correct as a matter of law, *Evjen v. Employment Division, supra,* and because there is no substantial evidence to support the board's finding about claimant's unavailability for work, we reverse the board and hold that on the record here claimant was actively seeking and available for work.

Reversed.